Freedman, J.
This action was brought to have a certain tax assessed for the year 3SS2 upon a certain lot and building of the plaintiff in the city of New York, adjudged void; to have the lien created thereby removed as a cloud upon plaintiff’s title, and to perpetually restrain the defendant’s from collecting the tax. The tax is valid upon its face, and .constitutes an apparent lien, hut the plaintiff contends that, at the time of the assessment ol' the tax, the *309 premises in question were exempt by law from taxation by reason of their ownership and use.
The evidence shows that, at the time in question, the plaintiff was a Roman Catholic Church; that the deed to the premises stood in the name of James J. Dougherty, the pastor of the church, with the knowledge and consent of the archbishop; that it was actually in the custody of the archbishop; that the moTiey paid for the premises had been advanced by and on behalf of the church; that the premises were used as a parochial school of the Roman Catholic Church under the direction of said Dougherty and under the immediate management of certain sisters of the church; and that, upon the incorporation of the plaintiff, in 1885, a deed from Dougherty to the plaintiff, of the premises, was executed. The children taught at said school were girls of the parish of ¡¡St. Monica, between the ages of five and sixteen years, and they were taught the common branches of education free of any charge. The school was supported entirely by voluntary contributions.
Upon this state of facts the plaintiff claims that the premises were and are exempt from taxation under the statute exempting school houses.
The learned counsel for the defendants, on the other hand, contends that the said statute does not apply, because the court of appeals in Chegaray v. The Mayor, etc., of N. Y. (13 N. Y., 220), held that the school-house referred to in the statute is the school-house of the public common schools, by which the court of appeals must have meant the schools maintained by public authorities.
The statute referred to by the court of appeals in the case cited, consisted of the Revised Statutes, part I, chapter 13, title 1, section 4, subdivision 3, which read as follows:
“§ 4. The following property shall be exempt from taxation.
I»***
2* * * * *
3. Every building erected for the use of a college, incorporated academy, or other seminary of learning; every building for public worship; every school-house, courthouse and jail; and the several lots whereon such buildings are situated, and the furniture belonging to each of them. ”
The history of the case of Chegaray v. The Mayor, etc., is as follows: “ The premises of the plaintiff, Madame Chegaray, were kept by the plaintiff as a young ladies’ boarding and day-school, in the city of New York, and a portion of the pupils were lodged and boarded in the building. It was a private school established and carried on for private *310 . gain. The premises were taxed by the authorities of the city, and upon the plaintiff’s refusal to pay the taxes, her personal property was seized for the payment thereof by one Jenkins, who was a constable and acted under and by virtue of a warrant issued to him by the receiver of taxes for the city and county of New York. ' She, therefore, brought an action against the officer for an alleged wrongful taking of the property, and in said action claimed 'that her premises were exempt from taxation under the statute above quoted on the ground that the building had been erected for the use of a “seminary of learning.” The trial took place in October, 1849, and resulted in a judgment for the plaintiff. The general term reversed the judgment and" directed judgment for the defendant. Upon plaintiff’s appeal to the court of appeals (Chegaray v. Jenkins, 5 N. Y., 376), it was said by Ruggles, Ch. J., that the school kept by the plaintiff was a seminary of learning, which was not required to be incorporated; and that even if it had been only a school, it was exempt, because under the statute every school-house was exempted from taxation, whéther the'school was incorporated or not, and that it made no difference whether the school was a public common school or a private school, and as such the private property of a single individual. He was of the opinion, however, and voted for the affirmance of the judgment on the ground that, as the warrant was in due form of law, the defendant as an officer was protected by it. Foot, J., placed his concurrence on the ground that the plaintiff was not an incorporated association. The views of the other judges do not appear from the report. The final result was that the judgment was affirmed.
Madame Chegaray thereupon brought action against the mayor, etc., of the city of. New York, to recover, as unlawfully assessed, the amount of taxes which Jenkins had collected and which the complaint alleged he had paid over to the defendants. In that action the general term gave .judgment for the plaintiff on the ground that her school was a. seminary of learning and for that reason exempt (2 Duer, 521). Upon defendants’ appeal to the court of appeals the counsel for the plaintiff, as appears from his points, rested the claim to exemption upon the sole ground that plaintiff’s building had been erected for the use of a seminary of learning. This claim the court off appeals, in (13 N. Y., 220), held tobe untenable. In disposing of it, Hand, J., in delivering the opinion of the court, said:
“It is evident that it was intended to exempt only property used by the public for the purposes of education, or which belonged to a corporation created for the advancement of learning, and- thereby devoted to educational. pur *311 poses. And it may be remarked that it is not the college, academy or seminary that is exempt, but * every building erected for the use’ of these institutions; thereby implying that the words ‘college’ and ‘seminary,’ as well as ‘incorporated academy,’ were here used to express some legal entity. And this is the only reasonable construction. By that contended for by the plaintiff, any person might build a school room and establish a private school in his house, and thereby exempt the building and the lot .from taxation; and, by a liberal construction, every house in which a private boarding school would be exempt. The school in question appears to be a laudable private enterprise, and I should regret very much that our decision should discourage such commendable efforts; but the meaning of the act appears to be plain, and that must control. The case of Chegaray v. Jenkins (1 Seld., 376) was decided entirely upon another ground, and what.was there said by one of the judges on the question now before us was wholly obiter and formed no part of the judgment.”
All the judges, except Gardner, Ch. J., who took no part in the decision, concurred in this disposition of the case, and the reversal of the judgment proceeded exclusively upon the ground that the statute had no application to a private seminary of learning owned by a single individual.
This examination clearly shows that the court was not called upon to construe or interpret the words “school house” contained in the statute, and that no such question was before the court for determination. When, therefore, Hand, J., in the introductory part of his opinion, said: “The property, however, is not exempt from the payment ¡of taxes. Hot as a “ school house,’ for the use of that word is familiar in this state, and its meaning in our school' laws cannot well be mistaken, and we cannot suppose it was here used in a different sense. It is the building provided for the use of our public common schools.” His remarks thus made were as much obiter as the remarks of Ruggles, Ch. J., in 5 N. Y., 376.
Moreover, the remarks made by Hand, J., concerning school buildings were made exclusively with reference‘to the fourth section of the statute as it stood by itself at the time of the action by Madame Chegaray, and, as that is a fact which cannot be controverted, it follows that even if the said remarks constitute a decision, the remark made by Beckham, J., in the case of The Association for the Benefit of Colored Orphans v. The Mayor, etc., of New York (104 N. Y., 581; 6 N. Y. State. Rep., 477), as to what was decided in Chegaray v. Mayor (13 N. Y., 220) concerning the mean *312 ing of the word “school house,” can have no greater weight than the decision itself.
Under these circumstances, I not only am at liberty, but it is my duty to proceed and examine how far other statutes affect the question now under consideration.
Under the third section of chapter 262 of the Laws of 1823 (p. 391), all school houses within the state and the lots on which they stood were exempt from taxation.
By the third section of the Laws of 1825 (p. 123) it was provided that “the exemption from taxation of * * * any school, under and by virtue'of the third section of the said act of the 23d of April, 1823, entitled “An act for the assessment and collection of taxes,” shall not extend or apply to any such buildings or premises in the said city (viz., the city of New York), unless the same shall be exclusively used for such purposes, and exclusively the property of a religious society, or of the New York Free School Society.”
The act of 1823, and all acts amending the same, were repealed by the twenty-ninth section of the general repealing act contained in 3 Rev. Stat. (1st ed.), 147. This repeal, as held by Ruggles, Ch. J., in Chegaray v. Jenkins, carried with it the repeal of the third section in the act or 1825.
The consequence was that under the Revised Statutes of 1830, and at the time Hádame Chegaray’s cause of action accrued, and up to the passage of chapter 282 of the Laws of 1852, the third subdivision of section 4 of title 1, chapter 13 of part 1 of the Revised Statutes, was the only provision of law which regulated the exemption of school houses and of the lots on which they stood.
In 1852 it was provided by chapter 282 of the Laws of that year (p. 417), as follows:
“The exemption from taxation of every building for public worship, and every school-house or other seminary of learning, under the provisions of subdivision 3 of section 4, title 1, chapter 13 of part first of the Revised Statutes, or amendments-thereof, shall not apply to any such building or premises in the city of New York, unless the same shall be exclusively used for such purposes, and exclusively the property of a religious society, or of the New York Public School Society.”
The act to consolidate into one. act and to declare the special and local laws affecting public interests in the city of New York, being chapter 410 of the Laws of 1882, made no abridgment in the exemptions'prescribed by the Revised Statutes. Section 824 of said act provides that certain property specifically mentioned therein shall be exempt from all taxation in addition to any which may be exempt *313 by virtue of general laws, and section 827 is a re-enactment of the act of 1852 above set forth, with the single exception that the concluding words “or of the New York Public School Society ” are omitted.
Pursuant to section 2143 of the said consolidation act, as it stood in 1882, and prior to the amendment by chapter 276 of the Laws of 1883, the said act was to take effect on March 1st, 1883, but for the purpose of determining the effect of said act upon other acts, except the Penal Code, and the effect of other acts, except the Penal Code, upon the said act, the act was to be deemed to have been enacted on January 1st, 1882.
The question of exemption in the case at bar must be determined with reference to the law as it stood in 1882, and the state of the law in that year, as already shown, was identical with the state of the law under the third subdivision of section 4 of title 1, chapter 13 of part 1, of the Revised Statutes and the act of 1852, taken together, with the single exception presented by the omission of the words, “or of the New York Public School Society,” which omission is undoubtedly due to the fact that the said society had ceased to exist in 1853.
Having now ascertained the precise state of the law in the year 1882, the next step in order is to ascertain, so far as necessary for the proper determination of the question in controversy, the true meaning of the law as it then stood. Here two propositions present themselves for construction. The first is that every school-house, and the lot whereon it is situated, shall be exempt from taxation. The second is that the exemption shall not apply to any such building or premises in the city of New York, unless the same shall be exclusively used for shoal purposes and exclusively the property of a religious society. When these two propositions are construed together, the second operates as a limitation upon the first. Asa necessary consequence, the subject of the limitation contained in the second must be included in the first. At the same time the implication necessarily arises that whenever, in a case in the city of New York, the conditions specified in the second are met, the exemption specified iñ the first shall attach.
The only conditions specified in the second proposition are, that the school-house and premises shall be exclusively used for school purposes, and shall be exclusively the property of a religious society. No further condition can be imposed by the courts. Nor can either of the conditions specified be imposed unless the school-house upon which it is to be imposed belongs to the class comprised within the words “every school-house.” The most that can be re *314 quired is, that both conditions shall be concurrently imposed. Such a construction would exclude, rather than include, the public school buildings and premises under the care and control of the board of education in the city of New York. Their exemption from taxation is probably secured by other provisions, because the said board is, as has been shown in Donovan v. The Bord of Education (44 N. Y. Supr. C. R., 53), a governmental agency created by the sovereign power of the state for the purposes of public education in the city of New York, and because the title to all school property under its care and control is by express statute (Laws 1853, chap. 301, § 14; Consolidation Act, § 1029), vested in the mayor, aldermen and commonalty of the city of New York. But if the exemption of the schoolhouses and premises under the care and control of said board were resting solely upon the two propositions now under examination, it could not be made out except by holding that after all, the true intention of the legislature was that the two conditions of the second proposition should be applied disjunctively, and not conjunctively, and that the word “and,” which stands between them, should be considered to mean “or.” It is not necessary, however, to pursue that inquiry any further, because, as will presently be shown, the plaintiff in the case at bar has satisfied both conditions. Suffice it to say that it has thus been clearly demonstrated that the words “every school-house,” in their application to the school-houses contained in the city of New York, must be held to include at least the school-houses owned by religious societies. Any other construction would render both the act of 1852 and section 827 of the Consolidation Act wholly superfluous and meaningless as to the school-houses.
Upon the evidence it is established beyond doubt that during the whole of the yearl882, the plaintiff was a religious society. But in this connection the point is raised that inasmuch as the plaintiff did not become incorporated until 1885, it cannot have the benefit of the statute. In my judgment the subsequent incorporation is an entirely immaterial fact upon this point. Under sub-division 3 of § 4, title 1, chap. 13 of part 1 of the Revised Statutes, it is necessary, as has been held by the court of appeals, for a college, academy or other seminary of learning, to be incorporated. But no such requirement can be attached to the words. “ every school-house.” Neither the clauses of the said subdivision considered separately, nor the sub division considered as a whole, admit of any such interpretation. Even the punctuation is an argument against such interpretation. Nor can the word “ incorporated ” be imported into the act of 1825, fcr into section 827 of the Consolidation Act, with *315 out the violation of well-settled rules of construction and interpretation. So is the case of The Hebrew Free School Association v. The Mayor, etc., of N. Y. (4 Hun, 446), it was expressly held that under the act of 1852, incorporation was not necessary.
For the reasons stated, the fact that the plaintiff, during the year 1882, was not incorporated, cannot defeat the action. So it can make no difference that the deed stood in the name of the pastor of the church, for the evidence establishes that that is a common transaction in such cases in the Roman Catholic Church. The money paid for the building and premises was the money of the church, and the pastor never claimed any personal benefit from or under the deed. Nor can it make any difference that the deed was not received by the pastor until February, 1882.
The contract for the purchase was made in December, 1881, and the fitting up for school purposes took place before the commencement of the year 1882. Moreover, the books for the correction of errors in the assessment of taxes for the year 1882, were closed upon the 1st day of May, 1882, and the character of the property in question for the purposes of taxation became fixed on that day. Upon all the facts the school-house and lots in question were, for the purposes of the present case, in equity and within the principle of the decision in 4 Hun, 446, as much the exclusive property of the church of St. Monica during the year 1882, as they would have been if the church had been incorporated and the deed had stood in its name from the first of January of that year. In the case last referred to, the Hebrew free school association did not own the fee, nor did it possess an equitable title to the land. It owned the building, but as to the land it had only a leasehold interest in it, with the privilege of a renewal of the lease and the duty of paying all taxes and assessments. Notwithstanding all this it was held to be the exclusive owner of the land and the building within the meaning of the act of 1852.
It still remains to be considered whether the school-house and premises in question were used exclusively for school purposes. The land ir valved consists only of a lot nineteen feet six inches in width and about 102 feet in depth, and on that the building stands. The building had, prior to 1882, been fitted up for school purposes, and, during the whole of that year it was in use as a school. Every floor was in actual use for the purpose of furnishing instruction to pupils free of charge, except that the top floor was occupied and used by some sisters of the church as a residence. But as the sisters thus residing there had the immediate management of the school, and resided on the *316 premises only on that account, and as their residence did not constitute a source of revenue or profit to the plaintiff, the top floor may he fairly said to have been as much devoted to a school purpose as the other floors were. Upon all the facts, the whole building and the entire premises were used exclusively for school purposes, within the meaning of the statute.
It thus having been shown that, in 1882, the building and lot in question were exclusively used for school purposes, and exclusively the property of a religious society, represented by the plaintiff in this action, within the meaning of the statute, it follows, as was held in 4 Hun, 446, that the tax for that year, which was imposed upon the said building and lot, was imposed without jurisdiction upon property exempt by law, and that the omission of the plaintiff to appear before the commissioner of taxes, and to object, did not give validity to the assessment.
Besides the cases mentioned by me in this opinion, there were others upon the briefs of the counsel for the respective parties. They were all examined with care, but ne specific reference to them was made by me, because they do not bear with sufficient directness upon the questions, discussed.
The plaintiff is entitled to judgment, as prayed for in. the complaint, with costs.